2012 OK CIV APP 88

**In the Matter of the ESTATE OF William HAMILTON, Deceased.**

**Susan Hamilton, Former Personal Representative/Appellant,**

v.

**William A. Hamilton, III and Marie N. Hamilton, Petitioners/Appellees.**

No. 108,894.

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 31, 2012.

Brad E. Hilton, Forrest B. Hess, Rebecca Wood Hunter, Skiatook, Oklahoma, for Former Personal Representative/Appellant.

Stephen L. Cale, Tulsa, Oklahoma, for Petitioners/Appellees.

BAY MITCHELL, Judge.

¶1 Appellant Susan Hamilton ("Daughter") is the former personal representative of

the estate of her deceased father William Hamilton. By the entry of its October 6, 2010 Decree Approving Final Account, Determining Heirship, and Distributing the Assets of the Estate, the trial court discharged her as personal representative and found that she had failed to notify the court that William A. Hamilton, III and Marie N. Hamilton ("the Grandchildren") were heirs-at-law of the deceased. The trial court therefore re-distributed the estate, providing the Grandchildren their share of distribution of the assets of the estate. Daughter appeals.

¶ 2 The deceased, an Osage Indian, died testate on December 23, 2003. The deceased had seven children. The will expressly identifies three children, who pre-deceased the decedent. One of those pre-deceased sons was survived by his two children (the Grandchildren at issue herein), although they were not specifically referenced in the will. By its terms, the will expressly bequeathed equal shares of the estate to Daughter and to his surviving son, Otto Eugene Hamilton.[1] Further, the will expressly provided daughter Katherine Joann Hamilton Rider with "my love and affection and nothing more." Finally, the will included the following clause: "Unto any heirs, professed heirs or claimants not herein specifically named, indicated, or set out, I leave my Love and affection and nothing more."

¶ 3 At the time of his death, Decedent owned Osage property subject to restriction and supervision of the U.S. Department of the Interior–Bureau of Indian Affairs ("BIA"). Federal law requires the Secretary of the Interior's prior approval of the will before its probate in the Oklahoma courts.[2]

¶ 4 Although this matter was initially presented for pre-probate approval in the BIA, the record demonstrates the Grandchildren were not afforded notice and an opportunity to appear and participate in the proceedings there.[3] In her appellate brief, Daughter explained the failure to provide notice of the BIA proceeding to the Grandchildren was a "mistake." In the Grandchildren's absence, a contest ensued. The deceased's four surviving children (including one child, Mary Wheeler, who was omitted from the will and Kathryn, the aforementioned child who was expressly disinherited therein) appeared and ultimately entered into a verbal "family settlement agreement" resulting in each child receiving an equal share of the estate (contrary to the express terms of the will). Apparently, the BIA had no notice and/or knowledge of the Grandchildren's status as heirs with an interest in the estate at the time the family settlement agreement was entered. After each child's sworn approval of the family settlement agreement, the BIA entered an Order approving the will and the family settlement agreement. It is apparent that no party appealed the Order Approving Will, which was approved by the U.S. Department of the Interior on February 15, 2005.[4]

---

1. There were four surviving children of the deceased.

2. The Osage Indian Act of 1978, Pub.L. 95–496, 92 Stat. 1660, § 5(a) (amending Section 8 of the Act of April 18, 1912 (37 Stat. 86, 88)) provides in pertinent part as follows:
   That the will of any Osage Indian shall not be admitted to probate or have any validity unless approved after the death of the testator by the Secretary of the Interior. The Secretary shall conduct a hearing as to the validity of such will at the Osage Indian Agency in Pawhuska, Oklahoma. Notice of such hearing shall be given by publication at least ten days before the hearing in a newspaper of general circulation in Osage County, Oklahoma, and by mailing notice of such hearing to the last known address of all known heirs, legatees, and devisees.

3. Federal regulation requires service by mail of notice of a hearing on a petition for approval of a will of a deceased Osage Indian on each presumptive heir, beneficiary under the will offered for consideration and attesting witness. 25 C.F.R. § 17.4.

4. By the authority delegated by the Secretary of the Interior, the Osage Agency Superintendent reviewed the will and the written transcript of the hearing before the BIA. This order of a superintendent of the Osage Indian Agency approving a will is final unless an appeal is filed pursuant to 25 C.F.R. § 17.14. That regulation further provides that "any appeal from the action of the superintendent of approving or disapproving a will shall be taken to the Secretary" of the Interior by providing notice of intent to appeal within 15 days after the date of the mailing of notice of the superintendent's decision. *Id.* at § 17.14(a). The Secretary's actions can be reviewed in federal court after administrative remedies have been exhausted. *See, e.g., Akers v. Hodel,* 871 F.2d 924 (10th Cir.1989)(holding Osage Agency had

¶ 5 In June 2006, an "Amended Petition for Probate of Will [family settlement agreement] and for Determination of Identity of Heirs, Devisees and Legatees" was filed by daughter. Again, Daughter concedes the Grandchildren were not mailed proper notice of the probate (and/or notice of hearing to distribute the estate) as heirs, contrary to statutory mandate. *See* 58 O.S.2001 §§ 25, 26 and 553.[5] In this amended proceeding, Daughter identified the children as heirs, but failed to identify the Grandchildren as heirs. In reliance on and subject to the federal agency's February 15, 2006 Order Approving the Will and the family settlement agreement, the trial court ultimately determined the four surviving children as the sole devisees and legatees of the decedent and ordered distribution of the estate to the four children in equal shares on September 17, 2007.

¶ 6 Almost three years later, Grandchildren filed their Petition to Vacate the September 17, 2007 Order Approving Final Account, Determining Heirs, and Directing Distribution of the Estate on the basis that despite the children's knowledge of the Grandchildren's existence, they were never provided notice of the will approval proceedings before the BIA, nor were they provided notice or opportunity to be heard in the subsequent probate proceeding despite the fact they are heirs-at-law to the estate. The Grandchildren further contend they were denied notice and/or an opportunity to participate in the family settlement negotiations, which resulted in an alteration of estate distribution from that specified in the terms of the will (including distribution to a pretermitted child heir).

¶ 7 After a hearing on the matter, the trial court entered its September 22, 2010 Order Vacating the Decree Approving Final Account, Determining Heirship and Distributing Assets of the Estate upon a finding that Grandchildren were denied the opportunity to participate in the actions of the estate and in the distribution thereof due to the Daughter's failure to issue them notice of same. Additionally, the trial court found "that it erred when approving the family settlement agreement as presented based upon incorrect information presented by the personal representative and her counsel." The trial court thereafter re-distributed the estate with the four children receiving a 1/5 share and each of the Grandchildren receiving a 1/10 share. The trial court thereafter entered its October 6, 2010 Order Approving Final Account, Determining Heirship and Distributing the Assets of the Estate from which Daughter appeals, which reiterated the re-distribution determination in Grandchildren's favor.

¶ 8 On appeal, Daughter primarily argues the various infirmities of the family settlement agreement upon which the BIA's approval (and the trial court's reliance) was based. She further challenges two of the children's inheritance (the will challengers at the BIA) on the basis of the express disinheritance terms of the will.

¶ 9 We do not address the merits of this appeal due to a fatal jurisdictional issue, which we raise *sua sponte*.[6] Because the Grandchildren were never afforded notice and an opportunity to be heard in the proceeding before the U.S. Department of the Interior–BIA in the mandatory pre-probate approval of an Osage Indian's will in the first instance, the district court was without authority to enter its October 6, 2010 Order re-distributing the assets of the estate. Given the clear, longstanding federal statutory and regulatory scheme applicable to the deceased

jurisdiction for purposes of approving or disapproving testator's will).

5. The Notice of Hearing on the Amended Petition for Probate of Will and for Determination of Identity of Heirs, Devisees and Legatees was published in the Pawhuska Journal Capital on July 12, 2006 pursuant to 25 O.S.2001 § 106. Additionally, although no notice was mailed directly to Grandchildren, notice of hearing prior to entry of the trial court's September 17,2007

Order Approving the Final Account, Determining Heirs and Directing Distribution of the estate was published twice in the Pawhuska Journal Capital on August 15, 2007 and August 22, 2007.

6. Jurisdictional inquiries into judicial cognizance may be considered and examined at any stage of the proceedings, either on motion or *sua sponte*. *Lincoln Bank & Trust Co. v. Oklahoma Tax Comm'n*, 1992 OK 22, 827 P.2d 1314, 1318.

Osage Indian's estate herein, the state courts should not assume any civil adjudicatory authority (either at the trial court level or on appeal) unless and until it is expressly authorized by that scheme. That scheme unambiguously provides for a pre-probate will approval proceeding before the BIA after notice of the hearing is mailed to all known heirs. Grandchildren are entitled to participate in the will approval proceeding, contest the terms thereof, and present evidence in support of their interest in the estate. The BIA, by federal law, is entitled to make a first-instance determination as to the validity of the will in light of Grandchildren's assertion of their right to a distributive share of the estate.

¶ 10 Further, under the Osage Indian statutory and regulatory scheme, the Secretary's determinations can be reviewed *in federal court after administrative remedies have been exhausted.* *See* 25 C.F.R. § 17.14.[7] "The fundamental requisites of procedural due process are notice, the right to be heard before a fair and impartial tribunal having jurisdiction over the subject matter, and the right to confront witnesses." *Williams v. State ex rel. Dep't of Pub. Safety,* 1990 OK CIV APP 27, 791 P.2d 120, 124. The case is reversed and remanded for a first-instance determination by U.S. Department of the Interior–BIA of the will's validity with all heirs, including Grandchildren, afforded proper notice and an opportunity to participate in the proceedings.

¶ 11 REVERSED AND REMANDED.

BELL, P.J., and HETHERINGTON, J., concur.

---

7. "No court except a Federal court shall have jurisdiction to hear a contest of a probate of a will that has been approved by the Secretary." The Osage Indian Act of 1978, Pub.L. 95–496, 92 Stat. 1660, sec. 5.(a). "Where relief is available from an administrative agency, a plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts." *Waste Connections, Inc. v. Oklahoma Dep't of Envtl. Quality,* 2002 OK 94, ¶ 7, 61 P.3d 219, 222. This "allows the agency to apply its expertise and discretion under the statutory scheme the agency itself is charged with administering." *Id.*